DENNIS (JAFFRAY v.). See Case No. 7,171.

## Case No. 3,796.

DENNIS v. The LEAR.

[Bee, 213.] [1]

District Court, D. South Carolina. Nov. Term, 1805.

PRIZE—VALIDITY OF SALE—FOREIGN ADJUDICATION.

Sale by order of the provisional agent at Barracoa is valid, being subsequently confirmed by the proper jurisdiction at Guadaloupe, under a law existing before the capture.

The libel filed in this case states that Dennis, owner of the brig Lear, sent her in November last on a trading voyage to St. Domingo, and bound to Cape Francois, where she arrived in December, and sold her cargo. Having taken in a return cargo, she proceeded, in February, to Port de Paix, for the sole purpose of joining sundry other American vessels, some of which were armed, and might protect her against the brigand cruizers. She staid at Port de Paix only two days, and sailed from thence on the 2d of March last, in company with the other American ships, and bound to Philadelphia. On the 5th March following she was captured

[1] [Reported by Hon. Thomas Bee, District Judge.]

by the French privateer Rencontre, and carried into Barracoa. Here the cargo was taken out, and the vessel illegally sold to one Taylor, without any previous investigation or sentence of condemnation, according to the law of nations. She is now in the harbour of Charleston.

To this libel a claim and answer, interposed by Taylor and Tavel, owners of the brig, state that, being on a voyage from Cape Francois or Port de Paix, where she had been trading with the revolted negroes, she was lawfully captured and carried into Barracoa by the privateer. That as the vessel was in a leaky, disabled, and perishing condition, the captain of the privateer presented a petition to the agent of the government of Guadaloupe, stating the circumstances under which she had been captured, and her then bad condition, and requesting that a provisional sale might take place. That this was granted, conformably to French ordinances and regulations, and she was accordingly sold at public auction to the highest bidder; the money arising from the sale being deposited to await the definitive sentence. That at the said sale, Taylor, as agent for Tavel, purchased the brig for 875 dollars, and, after she had undergone considerable repairs, sent her here with a cargo from Barracoa. Several exhibits have been filed with these pleadings, among which are, 1st. The order for a provisional sale by the French agent at Barracoa, with a certificate from the American consul, that the said agent is duly authorized and appointed by General Ernouf, commander of Guadaloupe, 2d. The actual sale made under the said authority, and certified by said agent. 3d. The decree of condemnation of said brig and her cargo by the colonial prefect of Guadaloupe, and the commissary of justice for the said island; assisted by the commissary of marine, charged with preparing the trial of prizes, the colonial inspector, and the secretary of commission. The decree is founded on an arrêté issued 4th June 1804, by the captain-general of Guadaloupe, declaring that all vessels found trading to or from ports in possession of the revolters shall be considered as enemies of France, and shall be condemned as legal prizes, agreeably to the regulations in such cases.

BEE, District Judge. The questions for me to determine are, 1st. Whether the provisional order for sale was sufficient to change the property. 2d. Whether the decree of condemnation can be reconsidered in this court, and altered and revised by me.

Nothing is more common in courts of civil law than interlocutory orders and decrees, which, if subsequently confirmed by a definitive sentence, have never been called in question. Sales under such orders are frequent; especially of articles of a perishable nature. This seems to have been the case here, and I do not think that the propriety

of the proceeding can be questioned by me.
The decree of condemnation expressly ratifies the sale, and condemns both vessel and cargo as the property of enemies, according to their own previous regulation as to trade with the revolted negroes. How far they were justified in making such a rule, is in my opinion, a matter of executive or legislative interference. I do not consider this court as competent to reverse the sentence of a foreign court where the property is condemned as belonging to enemies: it would lead to a right of appeal from such decisions, and would be highly improper. On this principle I decided the case of Sheaf and Turner [Case No. 12,730]; that decree was affirmed on appeal; and must therefore be considered as a precedent. The case of Rose and Himely [Id. 12,047, 12,048] differed altogether from the present. There the condemnation is expressly declared to be in pursuance of an arrêté, passed subsequent to the capture. The decree was founded in error apparent on the face of it, for a law not in existence could not be infringed. The property, too, was in the hands of the marshal of this court, as belonging to the original owner, previously to the sentence of condemnation; nor had an order for sale ever been made. In Rose and Himely, the trade to Hispaniola was not interdicted till after the capture; in the present case the French arrêté had been published in all the American papers many months before. This was so well understood that most of the vessels engaged in this trade went armed, or under convoy of others that were armed; and it appears from the libel that the Lear knew the risque she ran, and went from the Cape to Port de Paix expressly for the purpose of sailing with armed ships from that place. Insurance had risen considerably upon risques like the present, when the Lear sailed; which was not the case as related to the voyage in Rose and Himely.

Upon the whole I think myself bound in the present instance by the sentence at Guadaloupe. the court there being competent to the condemnation of property as belonging to their enemies, under regulations that existed before the condemned voyage was undertaken. I dismiss the libel, with costs, subsequent to the filing of the sentence of condemnation.